IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | No. 11 CR 495 |
| | ) | |
| MIGUEL LARA-UNZUETA. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Miguel Lara-Unzueta's (Unzueta) motion to dismiss the indictment. For the reasons stated below, the motion to dismiss is denied.

## BACKGROUND

The record indicates that Unzueta is a native and citizen of Mexico and was granted temporary resident status in 1988 and lawful permanent resident status in the United States in 1990. In March 1996, Unzueta pled guilty to and was convicted of attempted first degree murder and armed violence and was sentenced to six years of imprisonment. In January 1997, then the Immigration and Naturalization Service (INS) initiated deportation proceedings against Unzueta, and on August 14, 1997, a

1

deportation hearing (Deportation Hearing) was conducted before an Immigration Judge (IJ). At the Hearing, Unzueta applied for discretionary relief from removal under Section 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.* (Section 212(c)), and argued that his offenses were not "aggravated felonies" under the INA. The IJ concluded that the offenses were aggravated felonies and denied Unzueta's request for Section 212(c) discretionary relief, finding that Unzueta was not eligible for such relief based upon a recent change in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The IJ terminated Unzueta's permanent resident status and ordered him removed to Mexico.

Unzueta appealed the IJ's ruling to the Board of Immigration Appeals (BIA) and in March 1998, the BIA affirmed the IJ's decision. On June 25, 1998, Unzueta was removed to Mexico. In June 2001, in *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court held that AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) did not apply to certain aliens who had convictions that became final prior to the enactment of AEDPA and IIRIRA. *Id.* at 326.

In October 2002, Unzueta was arrested for armed robbery and attempted armed robbery. Unzueta was then transferred to INS custody and was indicted on one count of illegally reentering the United States following his 1998 removal.

Unzueta was convicted of illegal re-entry and was sentenced to sixty-five months of imprisonment. In August 2007, Unzueta was again removed to Mexico.

In the instant action, the Government charges that on or before June 30, 2011, Unzueta again returned to the United States unlawfully and Unzueta is charged with reentry into the United States without advance permission from the United States Attorney General or the Secretary of the Homeland Security Department in violation of 8 U.S.C. § 1326(a) and 6 U.S.C. § 202(4). Unzueta now moves to dismiss the indictment.

## DISCUSSION

Unzueta argues that the decisions of the IJ and BIA were fundamentally unfair, contending that the IJ misled Unzueta by telling him that he was not eligible for discretionary relief under Section 212(c). Unzueta argues that he was denied due process during his removal proceeding because under the ruling in *St. Cyr*, he was eligible for Section 212(c) relief. The Government argues that Unzueta's motion to dismiss should be denied because he is pursuing an impermissible collateral attack on his deportation order and because he is precluded from pursuing his arguments based on the doctrine of collateral estoppel.

I. Collateral Attack on Deportation Order

The Government argues that Unzueta cannot collaterally attack his deportation order and that Unzueta failed to exhaust his administrative remedies. There is a limitation on collateral attacks on a deportation order pursuant to 8 U.S.C. § 1326(d), which provides as follows:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) of this section or subsection (b) of this section unless the alien demonstrates that–
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *see also United States v. Gonzalez-Roque*, 301 F.3d 39, 46 (2nd Cir. 2002)(indicating that a defendant must establish that he exhausted his administrative remedies before collaterally attacking a deportation order). Although the ruling in *St. Cyr* was in 2001, nothing prevented Unzueta from arguing in 1997 and 1998 that he should not be retroactively subject to the AEDPA in regard to eligibility for relief pursuant to Section 212(c). The record reflects that during the Deportation Hearing, Unzueta did not argue before the IJ that he was eligible for Section 212(c) relief due to the fact that his conviction became final prior to the enactment of the AEDPA or that the AEDPA should not be applied retroactively to his case. (G Ex. A 17-18). The record also reflects that Unzueta actually argued that

4

there might be a future change in the law that would impact his case. (G Ex. A 18). The record does not reflect that Unzueta argued in his brief to the BIA that he was eligible for Section 212(c) relief or that the changes in AEDPA should not be retroactively applied to him. (G Ex. C). In addition, even if Unzueta had raised the argument before the BIA, the argument had been waived at that point since he failed to raise it before the IJ.

Unzueta also argues that it is the "job of the immigration judge to correctly advise a defendant of equitable relief," and the burden should not be "on the defense counsel." (Reply 3). Unzueta also argues that "it is unreasonable to expect . . . [him] . . . to include all of the arguments in his BIA appeal to collaterally attack." (Reply 3). However, Unzueta was represented by counsel at the hearing before the IJ, and Unzueta has not cited any controlling precedent indicating that the failure to exhaust administrative remedies is excused in light of counsel's failure to present certain arguments during the hearing before the IJ.

In the instant action, Unzueta has not shown that he has exhausted his administrative remedies. In addition, Unzueta could have sought judicial review of any decision of the BIA. Unzueta could have also filed a habeas petition under 28 U.S.C. § 2241 prior to his deportation, but he failed to do so. Nor has Unzueta pointed to any fundamental unfairness. Therefore, Unzueta's motion to dismiss

cannot succeed since it constitutes an impermissible collateral attack on his deportation order.

II. Collateral Estoppel

The Government also argues that Unzueta's motion to dismiss should not succeed based on the doctrine of collateral estoppel. The doctrine of collateral estoppel "means that when an issue of ultimate fact has been determined by a valid and final judgment, the same parties cannot re-litigate that issue in any future lawsuit." *United States v. Thyfault*, 579 F.3d 748, 750-51 (7th Cir. 2009)(discussing considerations when applying the doctrine of collateral estoppel in criminal cases).

The record reflects that in the prior criminal case in the United States district court in 2003, when Unzueta was arrested and convicted for illegal reentry, Unzueta also filed a similar motion to dismiss the indictment as he has done in this case. In that case, which occurred after the ruling in *St. Cyr*, Unzueta raised virtually the same arguments. The district court denied Unzueta's motion to dismiss, finding that the collateral attack on the deportation order was barred under 8 U.S.C. § 1326(d). (G Ex. E 7). The Government has shown that Unzueta is collaterally estopped from presenting the same issue before this court that was already resolved in his prior criminal action.

In addition, this court notes that even if Unzueta had been granted the relief of a Section 212(c) waiver during the deportation hearing in 1997, and therefore maintaining his lawful permanent resident status, Unzueta re-entered the United States illegally and without inspection sometime between 2007 and June 2011 after he was previously deported. Therefore, Unzueta is properly subject to criminal charges in this case. As the Seventh Circuit Court observed:

> the inspection process is critical to the integrity of the immigration system. Current regulations require an alien to present himself at a designated port of entry, produce documentation establishing his right to enter the United States, and await completion of the inspection process before entering the country. 8 C.F.R. §§ 235.1 to 235.12 (1992). The purpose of these procedures is "in addition to making a closer examination of [an alien's] right to enter in the first place, [to] require and obtain information and a variety of records that enable [immigration officials] to keep track of the alien after his entry." *Goon Mee Heung v. INS,* 380 F.2d 236, 237 (1st Cir.), *cert. denied,* 389 U.S. 975, 88 S.Ct. 479, 19 L.Ed.2d 470 (1967).

*Leal-Rodriguez v. I.N.S.*, 990 F.2d 939, 946 (7th Cir. 1993). Therefore, based on the above, the motion to dismiss the indictment is denied.

## CONCLUSION

Based on the foregoing analysis, the motion to dismiss the indictment is denied.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 20, 2012